IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: Lillian P. Iannini, | ) | |
| | ) | Civil Action No. 10-55 |
| Debtor. | ) | |
| | ) | |
| Lillian P. Iannini, | ) | |
| | ) | (Appeal related to Bankruptcy Case |
| Appellant, | ) | Nos. 09-22081 and 09-2385) |
| | ) | |
| v. | ) | |
| | ) | |
| Deutsche Bank National Trust | ) | |
| Company, as Trustee, in trust for | ) | |
| the registered holders of Ameriquest | ) | |
| Mortgage Securities, Inc., Asset- | ) | |
| Backed Pass-Through Certificates, | ) | |
| Series 2004-118, | ) | |
| | ) | |
| Appellee. | ) | |

# **MEMORANDUM ORDER**

CONTI, District Judge.

## *Introduction*

Pending before the court is an appeal filed by Lillian P. Iannini ("Iannini" or "debtor") from two orders of the bankruptcy court dated December 3, 2009. The bankruptcy court granted a motion to dismiss filed by Deutsche Bank National Trust Company ("Deutsche Bank" or "creditor") at bankruptcy number 09-2385 (Civil No. 10-101, Docket No. 1, Ex. 12) with respect to an adversary proceeding commenced by Iannini, granted a motion for relief from stay filed by Deutsche Bank at bankruptcy number 09-22081 (Civil No. 10-55, Docket No. 1, Ex. 12), and denied a motion to dismiss filed by Deutsche Bank at bankruptcy number 09-22081 (id.). After

considering the submissions of the parties, the December 3, 2009 orders of the bankruptcy court are affirmed because the bankruptcy court correctly held it lacked subject-matter jurisdiction over the adversary proceeding.

*Background*

On January 30, 2006, Deutsche Bank filed a complaint in mortgage foreclosure against Iannini and her son, James L. Iannini ("James Iannini," and together with Iannini, "Ianninis"), in the Beaver County Court of Common Pleas at Docket No. 2006-10212. (Adversary Compl. ((Bankr. No. 09-2385, Docket No. 1), Ex. B.) The action was based upon the alleged failure of the Ianninis to make monthly mortgage payments in connection with real property located at 1907 Truman Drive, Aliquippa, Pennsylvania 15001. (Creditor's Br. (Docket No. 8) at 2-3.) In answering the complaint, the Ianninis alleged that debtor and creditor entered a prior agreement in which creditor agreed to forebear from filing a foreclosure action. On May 1, 2006, creditor moved for summary judgment. (Debtor's Br. (Docket No. 5) at 2.)

The Ianninis believe that the complaint was defective, because creditor did not own the subject property at the time the complaint was filed. Several months later on August 3, 2006, creditor filed a notice of mortgage assignment. The purpose of the assignment was to attempt to transfer the property interest of Ameriquest Mortgage Company ("Ameriquest") and AMC Mortgage Services ("AMC") to creditor. (Id.)

The Beaver County Court of Common Pleas scheduled a hearing on November 9, 2006, to decide creditor's motion for summary judgment. On November 7, 2006, however, James Iannini filed for bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania at bankruptcy number 06-25618. In that bankruptcy case, AMC, and not creditor,

filed a proof of claim alleging ownership of the mortgage on the property; the proof of claim did not mention the August 3, 2006 mortgage assignment. James Iannini paid $5,874.78 to AMC for the purpose of fulfilling his delinquent mortgage obligations. Approximately one year after the commencement of the bankruptcy action, the court dismissed the bankruptcy case without prejudice because James Iannini defaulted. (Id.)

After the dismissal of the bankruptcy case, Deutsche Bank turned its attention back to the foreclosure action pending in the Beaver County Court of Common Pleas. On February 28, 2008, the Beaver County Court of Common Pleas granted Deutsche Bank's motion for summary judgment. (Creditor's App. (Docket No. 8) at 70.) A sheriff's sale of the property was scheduled to take place on June 9, 2008, but James Iannini filed a second bankruptcy case before the sale could take place. (Creditor's App. at 93-94.) The second bankruptcy case was dismissed on July 11, 2008, because James Iannini failed to obtain credit counseling prior to the commencement of the bankruptcy action. (Creditor's App. at 100; Creditor's Br. at 3.)

The sheriff's sale was rescheduled for September 15, 2008. (Creditor's App. at 104-05.) On that date, James Iannini filed a third bankruptcy case, and the sale was again postponed. (Creditor's App. at 107, 109-10.) On October 28, 2008, by reason of James Iannini's failure to make regular plan payments, the bankruptcy court dismissed the bankruptcy case with prejudice and barred James Iannini from filing bankruptcy or invoking the provisions of the automatic stay in connection with the property for a period of 180 days. (Creditor's App. at 112-13; Debtor's Br. at 3.)

The sheriff's sale took place on November 17, 2008. (Creditor's App. at 121.) The parties do not dispute that Deutsche Bank purchased the property at the sale for $4,860.36; Iannini did not object to the sale at the time it occurred. (Id.; Creditor's Br. at 3-4; Debtor's Br.

3

at 3-4.) Also not disputed is that an ejectment proceeding was initiated in the Beaver County Court of Common Pleas at Docket No. 10251-2009. (Creditor's Br. at 4.)

On March 26, 2009, Iannini filed the instant bankruptcy proceeding pursuant to chapter 13 of the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. §§ 101 et seq. (Voluntary Pet. (Bankr. No. 09-22081, Docket No. 1).) On June 16, 2009, Deutsche Bank filed a motion to dismiss, or, in the alternative, for relief of stay. (Mot. to Dismiss (Bankr. No. 09-22081, Docket No. 29).) On July 6, 2009, Iannini filed an adversary complaint against Deutsche Bank, claiming a preference under § 544 and § 548 of the Bankruptcy Code. (Adversary Compl.; Debtor's Br. at 4.) Although using the word "preference" in the complaint, Iannini did not seek relief under 11 U.S.C. § 547; rather, she contended that the sheriff's sale was an unlawful fraudulent transfer of the property. She sought an order staying the ejectment proceeding that was pending in the Beaver County Court of Common Pleas, and a declaration that the sheriff's sale was null and void. (Adversary Compl. ¶¶ 5-7; Adversary Compl. at 6 ("Issue a temporary restraining order pending resolution of the within Adversary staying any further foreclosure activities by the Defendant," and "Declare the January 2, 2009 transfer of 1907 Truman Ave. to the Defendant null and void").) On July 15, 2009, Deutsche Bank filed a motion to dismiss the adversary action. (Mot. to Dismiss Adversary Action (Bankr. No. 09-2385, Docket No. 4); Creditor's Br. at 4.)

On December 2, 2009, the bankruptcy court heard oral argument on this motion. (Id.) Deutsche Bank argued that the court lacked subject-matter jurisdiction over plaintiff's adversary complaint. The bankruptcy court framed the issue as follows:

> Now, and the issue is, I think, properly focused in this instance on jurisdiction. And the problem [debtor has] is Rooker-Feldman. And the Third Circuit's most recent

> pronouncement on Rooker-Feldman severely limits – to the extent that it wasn't already clearly pretty limited – what a federal court can do with respect to a state court judgment. If I were to assume the jurisdiction over this action what – the relief that you're asking, regardless of how it's couched, is that I do something that will set aside this foreclosure sale. That absolutely impinges on the power of the state court that entered the foreclosure judgment and permitted the sale to go forward. I am not an appellate court. Rooker-Feldman clearly bars me from asserting jurisdiction in that respect.

(Creditor's App. at 44-45.) In response, debtor argued that the Court of Appeals for the Third Circuit incorrectly applied the Rooker-Feldman doctrine in Knapper v. Bankers Trust Co. (In re Knapper), 407 F.3d 573 (3d Cir. 2005), and Madera v. Ameriquest Mortgage Co. (In re Madera), 586 F.3d 228 (3d Cir. 2009), which involved situations similar to those faced by debtor. Debtor argued that the formulation of Rooker-Feldman used by the court of appeals was rejected by the United States Supreme Court in Exxon Mobil Corp. v. Suadi Basic Industries Corp., 544 U.S. 280 (2005). (Creditor's App. at 45.) The bankruptcy court disagreed with debtor's arguments, and held that it was bound by the Court of Appeals for the Third Circuit's decisions. The bankruptcy court stated "I'm deciding on the Rooker-Feldman issue that there is no jurisdiction." (Id. at 53.)

The bankruptcy court also addressed Iannini's argument that under § 544 and § 548 of the Bankruptcy Code she may void the sheriff's sale as a fraudulent transfer. (Id. at 33-34.) The court noted that § 548 does not permit invalidation of state foreclosures, and that she could not pursue a claim under § 544 because the deed was recorded before the bankruptcy case was commenced. (Id. at 33-34, 52-54.) The bankruptcy court stated that Iannini:

> has no interest in this property, because the hammer fell at the sheriff's sale. And under applicable state law, that meant that the debtor lost the right to redeem the property. And once the deed was

5

recorded, there could not be a bona fide purchaser for value that the debtor could step into the shoes of for [§] 544[(a)(3)] purposes.

(Id. at 53-54.)   The bankruptcy court emphasized that:

> There is [no case law] that says that a debtor can step into the shoes of a 544(b)(1) or (a)(1) -- whichever you choose to use -- creditor, under these circumstances, where the deed has been recorded two months -- more than two months -- almost three months before the petition was filed, and the sale was even earlier than that.

(Id. at 38.)

To the extent Iannini's adversary claims relied upon § 522 of the Bankruptcy Code, the bankruptcy court recognized that a debtor's right to sue to avoid a transfer of property as if in the place of a trustee is contingent on the debtor establishing an exemption on the property. No such exemption applied in Iannini's situation, because she did not possess an ownership interest in the property. "[W]hen the hammer fell on that November date . . . the debtor's equity of redemption was foreclosed as of that date." (Id. at 39.) Iannini "didn't own the property on the date of [this] filing. That's the fact. Unless and until the debtor can avoid the transfer and recover the property, not the value, but the property, and show that there's equity in it, the debtor has no exemption that can be claimed." (Id. at 40.)

The motion to dismiss the bankruptcy proceeding was denied, but the motion for relief from stay was granted. (Id. at 60, 64.)   Judge Fitzgerald reasoned:

> I think relief from stay has to be granted, because the debtor is really just a holdover at this point in time. It has no interest in the property. I really – I just don't see that there's any other result. Because I have no jurisdiction to afford the debtor the opportunity to try to do what the debtor wants to do. If I had jurisdiction, it may be a different issue, but I don't.

(Id. at 60.)

Since Deutsche Bank was granted relief from the automatic stay, the bankruptcy court dismissed and closed the adversary proceeding. (Id. at 65.) Orders confirming the rulings were issued on December 3, 2009. (Bankr. No. 09-22081, Docket No. 82; Bankr. No. 09-2385, Docket No. 30.) Debtor appealed. (Bankr. No. 09-22081, Docket Nos. 86-99; Bankr. No. 09-2385, Docket Nos. 33-49.)[1]

*Standard of Review*

This court has jurisdiction over the appeal from the bankruptcy court's orders dated December 3, 2009 pursuant to 28 U.S.C. § 158(a). A district court "in reviewing the decision of a bankruptcy court, must apply a clearly erroneous standard to findings of fact and exercise plenary review of the conclusions of law." Rosen v. Bezner, 996 F.2d 1527 (3d Cir. 1993) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222-23 (3d Cir. 1989); Brown v. Pa. State Employees Credit Union, 851 F.2d 81, 84 (3d Cir. 1989)).

*Discussion*

Iannini argues that the bankruptcy court erred in determining that it lacked subject-matter jurisdiction over the adversary proceeding on the basis of the Rooker-Feldman doctrine. The Rooker-Feldman doctrine provides that lower-level federal courts lack subject-matter jurisdiction to review certain state court rulings. Goodson v. Maggi, No. 08-44, 2010 WL 1328687, at *10 (W.D. Pa. Mar. 1, 2010). The origin of the doctrine stems from two decisions of the United

---

[1] Debtor appealed both orders. The appeal of the order at bankruptcy number 09-22081 was docketed in this court at civil number 10-55. The appeal of the order at bankruptcy number 09-2385 was docketed in this court at civil number 10-101. Debtor filed a motion to consolidate the cases, which the court granted. (Civil No. 10-101, Docket Nos. 2, 4-5.) Upon consolidation, the case at civil number 10-101 was closed. (Civil No. 10-101, Docket No. 5.)

7

States Supreme Court: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine applies to federal district courts, see Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream, 317 F. App'x 263, 265 (3d Cir. 2009), and federal bankruptcy courts, see Knapper, 407 F.3d at 581-82 ("Rooker-Feldman still applies" to adversary proceedings in bankruptcy court).

When a plaintiff seeks to litigate a claim in a federal court, the existence of a state court judgment in another case bars the federal proceeding under the Rooker-Feldman doctrine when entertaining the federal court claim would be the equivalent of an appellate review of that order. See Ernst v. Child & Youth Servs., 108 F.3d 486, 491 (3d Cir. 1997). This limitation upon the subject-matter jurisdiction of a federal district court derives from 28 U.S.C. § 1257, which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court." 28 U.S.C. § 1257; see Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir. 1992). Litigation challenging the correctness of the state court's resolution of the federal question must be through appellate review in the state courts and ultimately may be reviewed by the United States Supreme Court – not by a lower-level federal court.

The Court of Appeals for the Third Circuit recognizes that the Rooker-Feldman doctrine bars claims raised in federal courts in two situations. The first situation to which the doctrine acts as a bar is when "the federal claim was actually litigated in state court prior to the filing of the federal action." Knapper, 407 F.3d at 580. The second situation is when "the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." Id.

Iannini argues that the analysis applied by Court of Appeals for the Third Circuit to

8

Rooker-Feldman issues is inconsistent with that set forth by the Supreme Court in Exxon Mobil. Exxon Mobil was decided on March 30, 2005. In Exxon Mobil, the Court reviewed the Rooker-Feldman doctrine and noted it occupies "narrow ground" and is limited to a "confined" class of cases. Id. at 284. The Supreme Court held that the doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. The Court reasoned that, in those instances, federal court complaints should be dismissed for want of subject-matter jurisdiction. Id. "Rooker-Feldman bars a losing party in a state court 'from seeking what in substance would be appellate review of the state judgment in a United State district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" Id. (quoting Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994)). The Supreme Court found that the Rooker-Feldman doctrine did not apply in Exxon Mobil because the state court judgment at issue in that decision had not been entered prior to the filing of the federal court action. Id. at 293-94.

Based upon the Exxon Mobil decision, Iannini argues that the Rooker-Feldman doctrine does not apply to the second of the two situations to which the Court of Appeals for the Third Circuit applies the doctrine, namely, those situations where the federal claim is inextricably intertwined with the state court action. This court disagrees.

The Court of Appeals for the Third Circuit decided Knapper on May 24, 2005, almost two months after the decision in Exxon Mobil was issued. Knapper, 407 F.3d at 573. In Knapper, the debtor defaulted on loan agreements, and the creditor instituted foreclosure actions in state court on two properties owned by the debtor. The debtor never answered either lawsuit, and default judgments were entered. Foreclosure sales of both properties followed. Id. at 575.

9

Instead of appearing in state court to strike or open the default judgments, the debtor filed five successive chapter 13 bankruptcy petitions. Id. at 576. In the fifth bankruptcy case, the debtor filed an adversary proceeding seeking to vacate the two pre-petition sheriffs' sales. Id. at 577. The debtor asserted a due process constitutional claim and a claim under 11 U.S.C. § 544(b)(1). Id. at 578, 582.

The bankruptcy court held a trial, and concluded that, although service of the foreclosure complaints was defective, the service was constitutionally sufficient since the creditor which commenced the foreclosure action "used means which were reasonably calculated to inform [the debtor] of the two foreclosure actions." Id. at 577. The debtor failed to act in the state court after she learned about the judgments. Id. at 578.

The debtor appealed that decision to the Court of Appeals for the Third Circuit, and argued that because service did not comply with the requirements of a state law statute, the "state court did not have personal jurisdiction over her and, the two default judgments and the ensuing foreclosures and sheriffs' sales therefore denied her due process of law." Id. at 578. For this reason, she contended that "the default judgments, foreclosures and sheriffs' sales are void and the bankruptcy court erred in not vacating them." Id. The court of appeals recognized that the debtor was not trying to set aside or open the judgments under Pennsylvania law, but rather was raising a constitutional challenge to a state court judgment in federal court. Id. at 579.

The Court of Appeals for the Third Circuit dismissed the challenge on the basis of the Rooker-Feldman doctrine. It recognized that the doctrine applies in two circumstances, and held that this situation implicated the second circumstance – "[s]ince [the debtor's] constitutional claim was never 'actually litigated in state courts,' Rooker-Feldman would only apply if her constitutional claim is 'inextricably intertwined' with the state court adjudications." Id. at 581.

10

The court of appeals held that she could not prevail on her due process claim, because it would require an order negating the state courts' judgments and was therefore barred by Rooker-Feldman as a claim that was inextricably intertwined. Id.

The debtor also argued that her alternative claim asserted under 11 U.S.C. § 544(b)(1) did not require adjudication of constitutional issues, and was not barred by the Rooker-Feldman doctrine. In a footnote, the court explained that Rooker-Feldman does not preclude an action properly based upon § 544. Id. at 583-84 n.22. The court of appeals, however, held that the debtor could not rely upon § 544, because the debtor's action was not properly based upon that section of the Bankruptcy Code:

> [The debtor] cannot use § 544(b)(1) to void the default judgments and sheriffs' sales. As the Historical and Statutory Notes to § 544 make clear, subsection (b) "gives the *trustee* the rights of actual unsecured creditors under applicable state law to void transfers." (emphasis added). "Section 544(b)(1) subrogates the *trustee* to the position of an unsecured creditor under state law to avoid a transfer of property by the debtor." (emphasis added). [Steven Walt, Generosity in Bankruptcy: The New Place of Charitable Contributions in Fraudulent Conveyance Law, 32 LOY. L.A. L. REV. 1029, 1032 (1999)]. [The debtor] is not the trustee, she is the debtor. As we have mentioned, . . . although the caption of [the debtor]'s complaint lists the standing Chapter 13 trustee as a plaintiff, he did not participate in her adversary proceeding in any way. Section 544(b)(1) plainly gives the trustee the power to avoid certain transfers, however, [the debtor] has offered no authority to establish that it also confers that right upon the debtor under the circumstances here. . . .
>
> . . . .
>
> [The debtor] is not attempting to use § 544(b)(1) to avoid the default judgments and sheriffs' sales in order to recapture the two parcels of real estate for the benefit of creditors. Rather, she is attempting to use § 544(b)(1) to void the foreclosures and sheriffs' sales and have the real estate returned to her to the prejudice of creditors. However, a sheriff's sale pursuant to an order of court on a mortgage debt can not constitute a fraudulent transfer in violation

of § 544(b)(1). Accordingly, we reject [the debtor]'s attempt to seek refuge within the provisions of § 544(b)(1).

Id. at 583. The debtor argued that "she can stand in the shoes of trustee to avoid a transfer under § 544(b)(1) pursuant to 11 U.S.C. §§ 522(h), (g)(1)," but the court stated that the she could not rely upon § 522 to obtain the relief sought. Id. at 583 n.20.

In Madera, over four years after Exxon Mobil was decided, the Court of Appeals for the Third Circuit again applied in a bankruptcy context the Rooker-Feldman doctrine to a federal claim inextricably intertwined with a state ruling. The debtor in that case obtained a loan secured by real property; the lender was Ameriquest, who assigned the loan to Deutsche Bank. After defaulting on the second loan, Deutsche Bank initiated foreclosure proceedings in state court. The state court entered a default judgment. Id. at 230. The debtor filed for chapter 13 bankruptcy protection and instituted an adversary proceeding against Ameriquest. The debtor raised four claims all based upon the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq.; the debtor sought damages and rescission of the loan. The bankruptcy court granted summary judgment in Ameriquest's favor on the rescission claims, because, under the Rooker-Feldman doctrine, it was barred from taking action that would invalidate the foreclosure judgment. Id. at 231. Citing the application of the doctrine in Knapper, the Court of Appeals for the Third Circuit upheld the bankruptcy court. Madera, 586 F.3d at 232. The court of appeals stated that "a favorable decision for the [debtors] in the federal courts would prevent the Court of Common Pleas from enforcing its order to foreclose the mortgage." Id.

In Iannini's case, the bankruptcy court applied a similar analysis as that in Knapper and Madera, and held the Rooker-Feldman doctrine barred its jurisdiction over Iannini's claims. The bankruptcy court properly followed the rationale of those decisions. As stated in Stuart v.

Decision One Mortgage Co., LLC (In re Stuart), 367 B.R. 541 (Bankr. E.D. Pa. 2007), although "several circuits have questioned the vitality of the 'inextricably intertwined' guidepost," that concept "remains firmly embedded in the fabric of Third Circuit jurisprudence even after Exxon Mobil." Id. at 549-50.

Despite the continued application of the inextricably intertwined analysis by Court of Appeals for the Third Circuit, Iannini stresses that other circuits have rejected the application of the Rooker-Feldman doctrine to situations in which the federal claim is merely inextricably intertwined with the state adjudication. In particular, Iannini cites Hoblock v. Albany County Board of Elections, 422 F.3d 77 (2d Cir. 2005). In Hoblock, the Court of Appeals for the Second Circuit stated: "[t]he 'inextricably intertwined' language from Feldman led lower federal courts . . . to apply Rooker-Feldman too broadly." Id. at 86. To address this problem, the court of appeals adopted a four-part test for analyzing Rooker-Feldman doctrine issues:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"–i.e., Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

Id. at 85. All four parts must be met in order for the doctrine to apply. Id.

Even under the Hoblock formulation of the Rooker-Feldman doctrine, this court finds that the doctrine acts a jurisdictional bar to Iannini's claims. In In re Ward, 423 B.R. 22 (Bankr. E.D.N.Y. 2010), the validity of a foreclosure judgment entered in a state court was questioned. In that case, the debtor resided at property that was the subject of a foreclosure

judgment, and the property was later sold at a foreclosure auction. After the sale, the debtor filed a petition for chapter 13 bankruptcy protection and alleged that she owned the property in fee simple. In response, the assignee of the successful bidder at the foreclosure auction filed a motion seeking relief from the automatic stay in order to continue its efforts in pursuit of eviction of the debtor. Id. at 26. Applying the Rooker-Feldman standards adopted by the Court of Appeals for the Second Circuit in Hoblock, the bankruptcy court held that the Rooker-Feldman doctrine divested the court of jurisdiction to review the validity of the foreclosure judgment:

> The Rooker-Feldman doctrine applies in this case because the Debtor lost in the state court foreclosure action, the Foreclosure Judgment was rendered before the Debtor commenced this case, and the Debtor seeks this Court's review of the Foreclosure Judgment in the context of her opposition to the Purchaser's motion for relief from the automatic stay. The injury complained of, i.e., the foreclosure sale to the Purchaser, was "caused by" the Foreclosure Judgment because "the foreclosure [sale] would not have occurred but-for" the Foreclosure Judgment. Id. at 637. Accordingly, the Rooker-Feldman doctrine does not permit this Court to disregard the Foreclosure Judgment. See Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *4 (S.D.N.Y. June 23, 2009) ("Courts in this Circuit have consistently held that a plaintiff who lost possession of his home in a state court foreclosure proceeding is barred by the Rooker-Feldman doctrine from attacking the state court judgment in federal district court."); [Goddard v. Citibank, NA, No. 04CV5317, 2006 WL 842925, at *4 (E.D.N.Y. Mar. 27, 2006)] ("To the extent that Plaintiff asks that this court find the Judgment of Foreclosure to be invalid because her mortgage payments were up to date ... I find that this claim is barred by the Rooker-Feldman doctrine.").

In re Ward, 423 B.R. at 28. The bankruptcy court also noted that "the Rooker-Feldman doctrine was held to apply when a party sought to set aside a transfer of a house pursuant to a judgment of foreclosure, *even though the party argued that the judgment was procured by fraud*." Id. (emphasis added) (citing Estate of Keys v. Union Planters Bank, N.A., 578 F. Supp. 2d 629, 637

(S.D.N.Y. 2008)).

Besides the Hoblock decision, in her appeal Iannini cites a decision from the Court of Appeals for the Ninth Circuit, Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074 (9th Cir. 2000). Iannini relies upon this decision in arguing that the Rooker-Feldman doctrine does not apply to her claims because her adversary claims are brought under specific provisions of the Bankruptcy Code, namely § 544 and § 548. As already mentioned, the Court of Appeals for the Third Circuit in Knapper cited the Gruntz decision and acknowledged that Rooker-Feldman does not apply to *proper claims* under the Bankruptcy Code. Knapper, 407 F.3d at 582-83 n.22.[2] Since the debtor's claim was not a proper § 544(b)(1) claim, the Court of Appeals for the Third Circuit in a situation factually similar to that of this case applied the Rooker-Feldman doctrine. Knapper, 407 F.3d at 583.

Iannini's claims are similarly not properly raised under the Bankruptcy Code. The sections cited by Iannini all on their face provide only the trustee the power to avoid a transfer of property. Section 544(a) provides that "[t]he *trustee* shall have . . . the rights and powers of, or may avoid transfer of property of the debtor" that is voidable for various listed reasons. 11 U.S.C. § 544(a) (emphasis added). Similarly, § 544(b) provides that "the *trustee* may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim" that is allowable under parts of § 502 or not allowable under § 502(e). 11 U.S.C. § 544(b) (emphasis added).

Section 548(a) provides that "[t]he *trustee* may avoid any transfer . . . of an interest of the

---

[2] Although not in the context of a bankruptcy proceeding, the Court of Appeals for the Ninth Circuit in Ruesser v. Wachovia Bank, N.A., 525 F.3d 855 (9th Cir. 2008), held that the debtors' 42 U.S.C. § 1983 claims alleging that the defendants wrongfully sought to foreclose on property and evict the debtors in violation of their property rights "constitute[d] a de facto appeal of a state court decision and [we]re therefore barred by the Rooker-Feldman doctrine." Id. at 860.

15

debtor in property" in specified situations. 11 U.S.C. § 548(a) (emphasis added). Section 548(b) provides that "[t]he *trustee* of a partnership debtor may avoid any transfer of an interest of the debtor in property," if the debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer. 11 U.S.C. § 548(b) (emphasis added). Section 548(e) provides that "the *trustee* may avoid any transfer of an interest of the debtor in property" in limited circumstances. 11 U.S.C. § 548(e) (emphasis added).

Since Iannini is not a trustee, any adversary claim raised under § 544 or § 548 is not a proper claim on the face of those Bankruptcy Code sections, unless she has standing pursuant to § 522(h) of the Bankruptcy Code to bring claims under § 544 or § 548. Section 522(h) provides that:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if--
>
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
>
> (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h). In <u>Knapper</u>, the debtor relied upon this same provision of the Bankruptcy Code in arguing that "she can stand in the shoes of the trustee." <u>Knapper</u>, 407 F.3d at 583 n.20. The court of appeals held that under the circumstances, i.e. when the debtor attempted to use § 544(b)(1) to void default judgments and sheriffs' sales, the debtor could not rely upon § 522 to establish standing. The court explained that the debtor could not rely upon § 522, because "a sheriff's [prepetition] sale pursuant to an order of court on a mortgage debt can not constitute a fraudulent transfer in violation of § 544(b)(1)." <u>Id.</u> at 583. Similarly, Iannini – in the

16

circumstances presented here – cannot rely upon § 522 to show standing to seek a temporary restraining order "pending resolution of the within Adversary staying any further foreclosure activities by the Defendant," or a declaration that "the January 2, 2009 transfer of 1907 Truman Ave. to the Defendant" was "null and void."  (Adversary Compl. at 6.)

In Calabria v. CIT Consumer Group (In re Calabria), 418 B.R. 862 (Bankr. W.D. Pa. 2009), the bankruptcy court addressed an argument similar to the argument grounded upon Gruntz raised by Iannini.  In that case, a default judgment in mortgage foreclosure was entered on a loan secured by real property; after the entry of the default judgment, the debtors filed several bankruptcy petitions and brought an adversary proceeding against the creditor.  Id. at 863-64.  The creditor filed a motion to dismiss, arguing that, under the Rooker-Feldman doctrine, "the entry of the state court judgment prevents this Court from obtaining subject-matter jurisdiction."  Id. at 865.  The debtor argued that Rooker-Feldman doctrine did not apply, but the bankruptcy court explained:

> In citing [Gruntz and similar cases] the Debtors confuse the power of the bankruptcy court to enforce its own orders (or the statutory injunction of the automatic stay) with the power to disregard the findings of state courts with respect to the state courts' entry of pre-petition judgments. The former (i.e., ability to enforce orders and the automatic stay) appears to be conclusive, while the latter (i.e., the ability to set aside pre-petition judgments) is limited by the Rooker-Feldman Doctrine. [Gruntz, 202 F.3d] at 1083. Because in this case the state court judgment in foreclosure was entered prior to the initiation of the bankruptcy there was no violation of the automatic stay or other bankruptcy provisions with respect to its entry. The Court's ability to have a collateral review of those judgments is therefore limited [by Rooker-Feldman].
>
> While 28 U.S.C. § 1334 does give bankruptcy courts jurisdiction over civil actions "arising in or related to cases under title 11" it does not give this Court the unfettered power to collaterally review all state court judgments. The Debtors' Complaint is based solely on state law assertions and does not

> assert rights that arise in or under any provisions in the Bankruptcy Code. Therefore, the Rooker-Feldman doctrine applies divesting this Court of jurisdiction over the Debtors' Complaint.

Id. at 868.

Since the Rooker-Feldman doctrine rendered the bankruptcy court devoid of jurisdiction, the court need not address Iannini's arguments with respect to whether she stated a claim under the Bankruptcy Code.

*Conclusion*

And now this 24th of May, 2010, the above-captioned appeal of the December 3, 2009 orders of the bankruptcy court is hereby **denied**.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
U.S. District Judge